UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                    Case No. 13-CV-3454 (KMK)
                                                      Case No. 09-CR-1022 (KMK)

EMMANUEL MARTINEZ,                                         OPINION AND ORDER

                     Petitioner-Defendant.

Appearances:

Emmanuel Martinez
*Pro Se Petitioner*

Michael Gerber
Assistant United States Attorney
United States Attorney's Office
Counsel for Respondent

KENNETH M. KARAS, District Judge:

        Pro se petitioner Emmanuel Martinez ("Petitioner") has filed a Petition, pursuant to 28

U.S.C. § 2255, to vacate, set aside or correct his sentence.  For the reasons stated herein, the

Petition is dismissed.

I.  BACKGROUND

        On November 17, 2009, Petitioner was arrested pursuant to an Indictment charging him

with three narcotics distribution counts.  The first count alleged that Petitioner conspired to sell

five kilograms and more of cocaine and 50 grams and more of crack, in violation of Title 21,

United States Code, Section 846; the second and third counts alleged that Petitioner distributed

and possessed with intent to distribute 50 grams and more of crack, in violation of Title 21,

United States Code, Sections 812, 841(a)(1), and 841(b)(1)(A).  (*See* Indictment (Dkt. No. 2).)[1]

Petitioner was one of approximately 40 individuals named as Defendants in that Indictment.  The

Indictment described the conspiracy as the "Santana Organization," and alleged that Santana was

the leader of the organization, and that Petitioner and several others were "core members" of the

Santana Organization.  The Core Members allegedly were responsible for obtaining the narcotics

from various suppliers and preparing the narcotics for further distribution through others in

Yonkers and Peekskill.

On July 28, 2010, Petitioner pleaded guilty to both counts in the Indictment, after

receiving a so-called *Pimentel* letter from the Government.[2]  (*See* Government's Mem. of Law in

Opp. To Pet. ("Gov's Mem.") Ex. A ("Letter from Assistant United States Attorney Nicholas L.

McQuaid to Michael K. Burke, Esq., Mar. 10, 2010") (Dkt. No. 807).)  In the *Pimentel* letter, the

Government calculated the Guideline Range applicable to Petitioner as follows: The base

offense level was 38 (because the offense conduct was deemed to involve 22 kilograms of crack

and 6.5 kilograms of cocaine); there was a three-level enhancement because of Petitioner's

leadership role, but a three-level reduction because of Petitioner's timely acceptance of

responsibility.  (*Id.* at 2–3.)  Petitioner was in Criminal History Category I, so his Guidelines

Range was 235 to 293 months' imprisonment.  (*Id.* at 3.)

On November 2, 2010, the Probation Office distributed the final Pre-Sentence Report

("PSR") which included a calculation of Petitioner's Guidelines Range that was consistent with

---

[1] All docket citations refer to the docket in case number 09-CR-1022.

[2] In *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991), the Second Circuit
suggested that prosecutors inform defendants contemplating a guilty plea about "the likely range
of sentences that their pleas will authorize under the Guidelines."

that in the *Pimentel* letter.  Ten days later, the Government indicated that there were factual

disputes between it and Petitioner (and two other defendants), and therefore asked the Court to

schedule a *Fatico* hearing.[3]  (*See* Letter from Assistant United States Attorneys Nicholas L.

McQuaid and Douglas B. Bloom to the Court, Nov. 12, 2010 (Dkt. No. 328).)  The Court

scheduled the *Fatico* hearing for January 12, 2011.  (*See id.*)  On January 5, 2011, Petitioner

advised, in a letter to the Court, that he did not want the Court to hold a *Fatico* hearing.  (*See*

Letter from Emmanuel Martinez to the Court, Jan. 5, 2011.)[4]  This wish was confirmed in a letter

from Petitioner's counsel on January 12, 2011.  (*See* Gov's Mem. Ex. E. ("Letter from Michael

K. Burke, Esq. to Assistant United States Attorney Douglas B. Bloom, Jan. 12, 2011").)  That

same day, counsel informed Petitioner that he had, at Petitioner's request, withdrawn the request

for a *Fatico* hearing.  (*See* Letter from Michael K. Burke, Esq. to Emmanuel Martinez, Jan. 12,

2011 (Dkt. No. 451).)  Sentence was adjourned to May 11, 2011.

Before the May sentence, counsel for Petitioner filed a letter in which he challenged the

weight of narcotics to be considered in calculating the Base Offense Level and the leadership

enhancement.  (*See* Letter from Michael K. Burke, Esq. to the Court, Apr. 22, 2011 (Dkt. No.

451).)  In particular, counsel claimed that the Peekskill and Yonkers distribution networks

alleged in the Indictment were separate, and that Petitioner should only be held responsible for

the narcotics distributed in Yonkers, thus reducing the relevant weight to 2.3 kilograms of crack.

---

[3]  "A '*Fatico*' hearing is a sentencing hearing at which the prosecution and the defense may introduce evidence relating to the appropriate sentence."  *United States v. Lohan*, 945 F.2d 1214, 1216 (2d Cir.1991) (citing *United States v. Fatico*, 603 F.2d 1053 (2d Cir.1979)) (internal quotation marks omitted).

[4]  In this letter, Petitioner represented that he had "investigated what could go wrong at a [*Fatico*] hearing," and therefore had "instructed [his] counsel to" withdraw the request for such a hearing.

(*Id.* at 8–9.)  Counsel also argued that Petitioner should only receive a two-level enhancement

for his leadership role.  (*Id*. at 10–11.)  As a result of these challenges, counsel contended that

the applicable Guidelines Range was 135 to 168 months' imprisonment.  (*Id.* at 9.)

The Government countered counsel's claims with a letter in which it contended that it

had come upon additional information, discovered after it gave Petitioner the *Pimentel* letter, that

showed that the relevant offense conduct involved over 60 kilograms of crack and 15 kilograms

of cocaine, that Petitioner was the leader of at least five co-conspirators, and that Petitioner

possessed a firearm during the conspiracy.  (*See* Gov's Mem. Ex. H ("Letter from Assistant

United States Attorneys Nicholas L. McQuaid, Kathryn M. Martin, and Douglas B. Bloom to the

Court, May 5, 2011").)[5]  The Government asserted that it was prepared to offer proof in support

of these claims at a *Fatico* hearing, and that, if found by the Court to be true, the applicable

Guidelines Range would be 324 months' to life imprisonment.  (*Id.* at 3.)  Counsel for Petitioner

objected to a *Fatico* hearing, in part on the view that the new information was untimely.  (*See*

Letter from Michael K. Burke, Esq. to the Court, May 6, 2011 (Dkt. No. 465).)  The Court

determined that a *Fatico* hearing was appropriate.

The Court ultimately did not hold a *Fatico* hearing, because Petitioner and the

Government entered into a stipulation ("the Sentencing Stipulation").  In the Sentencing

Stipulation, which was dated June 28, 2011, but executed by Petitioner and his attorney on July

8, 2011, Petitioner and the Government agreed with the Guidelines calculation in the *Pimentel*

letter (and the PSR) and, therefore, that the applicable Guidelines Range was 235 to 292 months'

---

[5] The *Pimentel* letter did not bar the Government from making use of this additional information.  *See United States v. Habbas*, 527 F.3d 266, 272 (2d Cir. 2008) (holding that the Government is permitted to deviate from estimates provided in a *Pimentel* letter, as long as the Government acts in good faith).

imprisonment. (*See* Gov's Mem. Ex. K ("Sentencing Stipulation"), at 2–3.) In particular, pursuant to this Stipulation, Petitioner "acknowledge[d] that he agreed not to seek a *Fatico* hearing because he in fact did participate in a conspiracy to distribute at least 22 kilograms of crack cocaine and at least 6.5 kilograms of powder cocaine and was a manager of criminal activity that involved 5 or more people." (*Id.* at 5.) Also, in the Sentencing Stipulation, Petitioner agreed that he would not directly appeal, or "bring a collateral challenge . . . under Title 28, United States Code, Section 2255 and/or Section 2241" to, a sentence "within or below the Stipulated Guidelines Range of 235 to 292 months' imprisonment." (*Id.* at 4.)

The Court imposed sentence on July 8, 2011. Before turning to the sentencing issues, however, the Court conducted an extensive colloquy with Petitioner regarding the Sentencing Stipulation. (*See* Sentencing Tr. 8-17.) During this colloquy, Petitioner acknowledged, among other things, that he: (i) clearly understood what was going on during the proceeding and that his mind was unaffected by any medicine or other substances, (*id.* at 9); (ii) carefully reviewed the Sentencing Stipulation with his counsel, that his counsel answered any questions about the document to Petitioner's satisfaction, and that he understood the terms of the Sentencing Stipulation, (*id.* at 10–11); (iii) understood that the Court, and not his lawyer or the Government's lawyers, would determine his sentence, (*id.* at 11); (iv) understood that he agreed with the Government that the applicable Sentencing Guidelines range was 235 to 292 months' imprisonment, and that this Range was properly calculated due to his agreement with the Government about the quantity of narcotics involved in the offense conduct (22 kilograms of crack and 6.5 kilograms of cocaine) and Petitioner's leadership role in the conspiracy (*id.* at 12–13); (v) understood that he had a right to contest, at a *Fatico* hearing, the quantity of narcotics that should be considered in calculating the Guidelines Range, but that by signing the

5

Sentencing Stipulation Petitioner was waiving this right to such a hearing, (*id.* at 13–14); (vi) understood that regardless of the sentence Petitioner received, he could not withdraw or take back his guilty plea, (*id.* at 15); (vii) specifically agreed that he would not legally challenge, via a habeas petition or otherwise, any sentence within or below the Stipulated Guidelines Range, (*id.*); and (viii) recognized that by signing the Sentencing Stipulation, Petitioner was acknowledging that he was guilty of conspiring to distribute 22 kilograms of crack and 6.5 kilograms of cocaine, (*id.* at 16).

At sentencing the Court noted that it had read the Parties' pre-sentence submissions and the PSR. (*Id.* at 2–3.) Counsel for Petitioner spoke first, and emphasized the fact that the charged conspiracy included, in effect, two different schemes, one of which involved narcotics distribution in Yonkers and the other in Peekskill, and that Petitioner should not be held responsible for the Peekskill portion. (*Id.* at 21–23.) Counsel also asked the Court to consider the sentences of the co-defendants, in support of his claim that the Court should impose a sentence below the Guidelines Range. (*Id.* at 23–27.) The Government responded by noting that the narcotics weight attributed to Petitioner was based on crack and cocaine he either handled, or was directly involved in distributing, and not on the distribution efforts of others in Peekskill that might have been foreseeable to Petitioner. (*Id.* at 35–36.) The Government also argued that Petitioner should receive a higher sentence than some of the co-defendants because of his more substantial role in the conspiracy, including his leadership position. (*Id.* at 36-37.) The Government also discussed a post-arrest letter from Petitioner to another inmate. In this letter, Petitioner described a suspected cooperating witness as a "fucking Bitch who deserves to die because of his Bitch ways." (Gov't Mem. Ex. L.) In this letter, Petitioner also noted that he was

"holding it down like the man that I am." (*Id.*)  Finally, Petitioner spoke on his own behalf before the Court imposed sentence.

The Court imposed a sentence of 235 months' imprisonment, which was at the bottom of the applicable Guidelines Range.  (*Id.* at 51.)  In doing so, the Court explicitly noted that it had considered all the factors in Title 18, United States Code, Section 3553(a) to determine what sentence was sufficient but no more than necessary to achieve the goals of the sentencing laws. (*Id.* at 45–47.)  The Court also discussed the issue of the weight of narcotics that Petitioner was responsible for, noting specifically that the evidence demonstrated that Petitioner was responsible for the quantity he admitted to in pleading guilty.  (*Id.* at 45–46.)  The Court also took into consideration Petitioner's troubling letter about the suspected cooperating witness.  (*Id.* at 46–47.)  The Court also explained that while it understood and sympathized with Petitioner's personal issues, those  circumstances did not outweigh the aggravating factors under § 3553(a). (*Id.* at 50–51.)

Petitioner subsequently filed the instant § 2255 Petition.

## II.  DISCUSSION

### A. Standard of Review

A prisoner in federal custody may move to vacate, set aside or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).[6]  "Because collateral challenges are in tension with society's

---

[6]Title 28 U.S.C. § 2255(a) provides:

strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and internal quotation marks omitted).  To prevail on a collateral attack of a final judgment under Section 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation and internal quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *1 (S.D.N.Y. Nov. 25, 2013).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).  Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible."  *Machibroda v. United States*, 368 U.S. 487, 495 (1962).  To justify a hearing, the petition must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle the petitioner to relief.  *See Gonzalez*, 722 F.3d at 131.   Finally, because Petitioner is appearing pro se, the Court construes the Petition liberally and interprets it to raise the strongest arguments that

---

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

it suggests.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

B. Waiver

Petitioner claims he is entitled to relief under section 2255 for several reasons.  First, he claims that his counsel erred by letting Petitioner enter into the Sentencing Stipulation because it provided no benefit to Petitioner.  Second, Petitioner claims that his counsel refused to insist on a *Fatico* hearing.  Third, Petitioner asserts that his counsel failed to challenge the relevant conduct for which he feels was improperly included in the narcotics weight.  Fourth, Petitioner claims that his counsel failed to arrange a so-called "safety valve" proffer with the Government. (Aff. of Emmanuel Martinez ("Martinez Aff.") ¶¶ 5–9 (Dkt. No. 762).)[7]

As noted above, Petitioner agreed that he would not "file a direct appeal," or litigate "under Title 28, United States Code, Section 2255 and/or Section 2241[,] . . . any sentence at or below the Stipulated Guidelines Range . . . ."   (Sentencing Stipulation, at 4.)  The Court specifically highlighted this provision for Petitioner during the colloquy at sentencing.  Because the Court imposed a sentence within the Stipulated Guidelines Range, Petitioner must first overcome the hurdle imposed by this provision.  *See Flamenco v. United States*, No. 11-CV-633,

---

[7] Petitioner's former counsel, Michael Burke, has submitted an affidavit (in compliance with an order from the Court) in response to the Petition.  In this affidavit, Mr. Burke denies that he refused to request a *Fatico* hearing, noting that it was Petitioner who withdrew the request for such a hearing.  (Aff. of Michael K. Burke, Esq. ("Burke Aff.") ¶¶ 5, 10 (Dkt. No. 809).) Indeed, Mr. Burke avers that Petitioner withdrew that request to avoid a Guidelines Range of 324 months' to lifetime imprisonment (based on narcotics distribution far greater than originally alleged by the Government).  (*Id.* ¶ 12.)  Mr. Burke also states that Petitioner told him that he was not interested in a safety valve proffer, and, in fact, noted that Petitioner would not be eligible for such because of his leadership role in the charged conspiracy.  (*Id.* ¶¶ 14–15.)  A hearing is unnecessary to resolve any disputes between Petitioner's claims and Mr. Burke's affidavit, because the Petition otherwise lacks merit.

9

2014 WL 775000, at *3 (E.D.N.Y. Feb. 24, 2014) ("Where a defendant knowingly and voluntarily waives his right to appeal [or bring a collateral challenge] if his sentence falls at or below a stipulated range pursuant to the plain language of a plea agreement, a challenge to the sentence must be dismissed.").

"Waivers of the right to appeal a sentence are presumptively enforceable." *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010); *see also Twine v. United States*, No. 12-CV-227, 2014 WL 119370, at *4 (E.D.N.Y. Jan. 10, 2014) (noting that appeal waiver provisions are "presumptively enforceable"). Indeed, the Second Circuit has "repeatedly upheld the validity of such waivers" where they are "knowingly, voluntarily, and competently provided by the defendant." *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000); *see also United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998) ("It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable."). "A knowing and voluntary waiver of the right to litigate pursuant to Section 2255 is also valid and enforceable." *Abramo v. United States*, No. 12-CV-1803, 2014 WL 1171735, at *8 (S.D.N.Y. Mar. 21, 2014); *see also Frederick v. Warden, Lewisberg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement."); *Russo v. United States*, 313 F. Supp. 2d 263, 265 (S.D.N.Y. 2004 ("The [Second] Circuit has specifically held that a waiver of a right to appeal in a plea agreement includes a waiver of a right to file a § 2255 petitioner challenging his or her sentence.") (citing *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995)).

A waiver is knowing if the "defendant fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004) (internal quotation marks omitted). In determining whether a defendant understood the consequences of a waiver, the

10

district court is "entitled to rely upon the defendant's sworn statements, made in open court . . ., that he understood . . . that he was waiving his right to appeal a sentence below [the Stipulated Guidelines Range]." *United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir. 2001); *see also Abramo*, 2014 WL 1171735, at *9 (same).

The "exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [the Second Circuit's] jurisprudence." *Gomez-Perez*, 215 F.3d at 319. One area where the presumptive enforceability of a waiver may be overcome is by "an attack on the validity of the process which the waiver has been procured, here, the [Sentencing Stipulation]." *Frederick*, 308 F.3d at 196.[8]  For example, waivers do not prevent defendants from seeking relief from the underlying plea where . . . "[a]n ineffective assistance of counsel claim . . . concerns the advice the defendant received from counsel." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks omitted).  In such circumstances, the waiver is deemed not to have been knowing or voluntary.  *See id.*  In recognizing this exception, however, the Second Circuit has distinguished between "challenging the attorney's role in shaping the defendant's bargaining position[,] [which] cannot avoid the waiver, [and] challenging the attorney's *advice* about the bargaining position, by connecting the knowing and

---

[8] There are other exceptions that can invalidate a waiver.  *See Karimu v. United States*, Nos. 13-CV-1689, 10-CR-422, 2013 WL 4017168, at *3–4 (S.D.N.Y. Aug. 6, 2013) (discussing circumstances barring the application of a sentence/collateral challenge waiver provision in a plea agreement).  One occurs when a court imposes a sentence based on certain "constitutionally impermissible factors," such as a defendant's race, ethnicity, or other prohibited biases.  *See Gomez-Perez*, 215 F.3d at 319; *see also United States v. Johnson*, 347 F.3d 412, 415 (2d Cir. 2003) (indigent status); *United States v. Jacobson*, 15 F.3d 19, 23 (2d Cir. 1994) (naturalization status).  Relatedly, the court's abdication of its judicial responsibility, by failing to offer *any* rationale for its sentence, can invalidate a waiver.  *See United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995).  Another exception involves a breach of the plea agreement by the Government.  *See Gomez-Perez*, 215 F.3d at 319.  None of these circumstances has been, nor could be, alleged here.

11

voluntary nature of the defendant's decision with the attorney's conduct." *Id.*  In the latter case, the challenge is to the "constitutionality of the *process* by which [the defendant] waived [his right to appeal]." *Id.* (second alteration in original).  "Thus, a claim of ineffective assistance that is unrelated to the plea bargaining process does not provide a basis upon which to invalidate a waiver of the right to challenge the conviction by appeal or by a Section 2255 proceeding." *Abramo*, 2014 WL 1171735, at *10.  This means, for example, that a claim of ineffective assistance is waived when it relates to counsel's performance at the sentence.  *See Djelevic*, 161 F.3d at 107 (holding that a claim that counsel was ineffective "not at the time of the plea, but at sentencing" does not survive the waiver); *Abramo*, 2014 WL 1171735, at *10 (noting that "counsel's alleged deficiencies at sentencing are . . . barred by Petitioner's knowing and voluntary waiver of the right to collaterally attack the sentence") (citation and internal quotation marks omitted).

As noted, it is beyond dispute that Petitioner entered into the Sentencing Stipulation and that Petitioner acknowledged that he fully understood the terms of this agreement, including the waiver provision.  *See Ferreira-Torres v. United States*, Nos. 08-CV-8025, 02-CR-1347, 2010 2594909, at *2 (S.D.N.Y. June 28, 2010) (noting that the record established the petitioner's knowing and voluntary waiver of right to bring a section 2255 challenge to a sentence within the stipulated guidelines range).  As a result, two of Petitioner's claims are waived by the Sentencing Stipulation.

One of these waived claims is that counsel erred by failing to challenge the narcotics weight to be attributed to Petitioner.  As a general matter, a sentence "conceivably imposed in an illegal fashion or in violation of the Guidelines," which did not even happen here, will not invalidate a waiver when the sentence imposed is within the stipulated guidelines range in the

agreement.  *Gomez-Lopez*, 215 F.3d at 319; *see also United States v. Bilal*, 941 F. Supp. 2d 397, 402–03 (S.D.N.Y. 2013) (rejecting a § 2255 challenge to a sentence on a claim, among others, that the court miscalculated the petitioner's criminal history due to a plea waiver).  Moreover, as noted above, to the extent that Petitioner quibbles with counsel's advocacy at sentencing, his claim is covered by the waiver in the Sentencing Stipulation.  *See Djelevic*, 161 F.3d at 107 (noting that if courts "were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless").  Indeed, Petitioner's claim regarding counsel's sentencing advocacy is really a challenge to the Court's finding that Petitioner was involved in distributing 22 kilograms of crack and 6.5 kilograms of cocaine.  *See id.* (noting that the defendant's challenge to counsel's performance at sentence was an "effort to dress up his claim as a violation of the Sixth Amendment" that "in reality" was a challenge to "the correctness of his sentence under the Sentencing Guidelines"); *United States v. Marte*, 798 F. Supp. 2d 511, 515 (S.D.N.Y. 2011) ("[The petitioner's] claim of ineffective assistance of counsel appears to be a backdoor attempt to attack his sentence.").  Yet, it is precisely this claim that he knowingly and voluntarily waived in the Sentencing Stipulation.  *See United States v. Concepcion*, Nos. 09-CV-4537, 06-CR-743, 2009 WL 4884095, at *1–2 (S.D.N.Y. Dec. 16, 2009) (finding a § 2255 challenge to a sentence within the stipulated Guidelines range based on a claim that a lawyer promised the petitioner he would receive a below-Guidelines sentence to be waived in the plea agreement); *Diaz v. United States*, No. 02-CV-3036, 2002 WL 31545835, at *1 (E.D.N.Y. Sept. 27, 2002) ("To the extent [the petitioner] . . . challenges his sentence either on *Apprendi* grounds or because counsel is alleged to have been constitutionally ineffective at sentencing, his claim is

barred by his plea agreement.").  Therefore, the Court concludes that Petitioner has waived this claim.[9]

Similarly waived is Petitioner's claim that counsel erred by not pursuing a *Fatico* hearing.  First, this claim of ineffective assistance does not involve counsel's advice in connection with the Sentencing Stipulation.  Instead, Petitioner merely complains that counsel did not ask for the very thing that Petitioner waived in the Sentencing Stipulation.  The claim is therefore waived.  *See United States v. Cano*, 494 F. Supp. 2d 243, 250–51 (S.D.N.Y. 2007) (finding a claim that counsel erred in recommending the petitioner pursue a *Fatico* hearing was waived by sentencing agreement barring the petitioner from challenging any sentence within stipulated Guidelines range); *Moore v. United States*, Nos. 00-CV-4560, 98-CR-833, 2001 WL 253432, at *16 (S.D.N.Y. Mar. 15, 2001) ("Counsel's alleged failure to seek a *Fatico* hearing is not an ineffective assistance claim that relates to the validity of [the petitioner's] plea or the waiver itself.").

Second, Petitioner cannot be heard to complain that he was unaware that the Court would not be holding a *Fatico* hearing.  To the contrary, the Court, in reviewing the Sentencing Stipulation with Petitioner, explicitly advised Petitioner that as a result of the Sentencing Stipulation it would not be holding a *Fatico* hearing.  The Court also explicitly advised Petitioner that in the Sentencing Stipulation he was agreeing to the weight of narcotics and to Petitioner's leadership role and that both would be considered in calculating the applicable

---

[9] In any event, it is beyond dispute that Petitioner's counsel did, in fact, challenge the weight of the narcotics that should have been attributed to him.  In both a pre-sentence letter to the Court and during the sentencing proceeding itself, Petitioner's counsel forcefully argued that the Court should not hold Petitioner responsible for the Peekskill distribution efforts.  (*See* Letter of Michael K. Burke, Esq. to the Court, Apr. 22, 2011, at 8–11; Sentencing Tr. 21–25.)  That counsel did not prevail in his argument does not amount to ineffective assistance.

14

Guidelines Range.  Indeed, Petitioner agreed to the applicable Guidelines Range in the

Sentencing Stipulation.  Thus, Petitioner was provided with all of the information related to his

sentencing and therefore knowingly and voluntarily waived his right a *Fatico* hearing.  *See*

*Hernandez v. United States*, No. 09-CV-6496, 2010 WL 1558559, at \*10 n.6 (S.D.N.Y.  Apr. 19,

2010) (rejecting, as waived, a claim that counsel erred in failing to seek a *Fatico* hearing because

the petitioner "had freely stipulated to the Guidelines computation"); *Moore*, 2001 WL 253432,

at \*16 (finding a claim that counsel was ineffective for failing to request a *Fatico* hearing was

waived because the petitioner "knew the plea's sentencing guideline calculation and the drug

amount on which it was based").[10]

　　　To the extent Petitioner now attempts to deny that he fully understood the meaning and

significance of the Sentencing Stipulation, his claim fails.  In particular, Petitioner asserts that

counsel did not tell him why he should sign Sentencing Stipulation or explain any of its contents.

(*See* Petitioner's Reply ¶ 5.)  Courts have repeatedly rejected such self-serving, uncorroborated

statements that contradict statements during a colloquy as a basis to challenge a sentence.  *See*

---

　　　[10] Aside from being waived, Petitioner's claim that counsel was ineffective because he
failed to pursue a *Fatico* hearing is meritless.  The record plainly demonstrates that it was
Petitioner who withdrew that request.  The correspondence between Petitioner and his counsel
makes this indisputably clear, as does Petitioner's in-court waiver of the *Fatico* hearing.  As
noted, Petitioner was advised by the Court during the colloquy at sentencing that the effect of the
Sentencing Stipulation would be that Petitioner would be waiving his right to insist on a *Fatico*
hearing to resolve the question of the narcotics weight and Petitioner's role.  This colloquy thus
trumps any claim about counsel's decisions or advice regarding the *Fatico* hearing.  *See Marte v.
United States*, Nos. 11-CV-3269, 02-CR-1490, 2012 WL 2953723, at \*6 (S.D.N.Y. July 20,
2012) ("Petitioner cannot show prejudice even if counsel's representations were deficient
because the [c]ourt advised him about the consequences of his plea before accepting that plea.");
*Diaz v. Mantello*, 115 F. Supp. 2d 411, 422 (S.D.N.Y. 2000) ("To the extent . . . counsel failed to
advise him of the consequences of pleading guilty, [the] petitioner did not suffer any prejudice
because, prior to accepting his plea, the trial court advised [the] petitioner of his legal rights and
[the] petitioner indicated that he understood the rights he was waiving by pleading guilty.").

*United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.") (internal quotation marks omitted); *Hsu v. United States*, 954 F. Supp. 2d 215, 221 (S.D.N.Y. 2013) ("Any allegations a defendant makes in a § 2255 petition 'cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth.'") (quoting *Hernandez*, 242 F.3d at 112–13); *McNaught v. United States*, 646 F. Supp. 2d 372, 383 (S.D.N.Y. 2009) ("[B]ecause the petitioner's claim that his plea was involuntary is based on conclusory allegations that contradict sworn statements he made during his plea allocution, this claims fails to provide a basis for vacating, setting aside, or correcting the petitioner's sentence."); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").  Petitioner's unequivocal statements at sentencing thoroughly undermine his claims in support of his Petition, and Petitioner has offered no reason why his earlier statements were inaccurate or wrong.  *See United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (holding that statements during plea colloquy "carr[y] such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made"). Therefore, the Court concludes that Petitioner was fully informed as to the applicable Guidelines Range, and the fact that there would be no *Fatico* hearing to address the weight of narcotics to be attributed to Petitioner or his role in the offense conduct.

    C.  Ineffective Assistance of Counsel

       As noted, Petitioner also claims his counsel was ineffective because he advised Petitioner to enter into the Sentencing Stipulation, even though it supposedly provided no benefit to

Petitioner, and because counsel refused to arrange a safety valve proffer.  The Court deems Petitioner not to have waived these claims, as they arguably suggest that Petitioner may not have knowingly and voluntarily entered into the Sentencing Stipulation.  *See Frederick*, 308 F.3d at 193 (holding that claims that trial counsel was ineffective during the process leading to the execution of a plea agreement and a guilty plea are not waived); *Benigno v. United States*, 285 F. Supp. 2d 286, 291 (E.D.N.Y. 2003) (same).

Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "First, the [petitioner] must show that counsel's performance was deficient."  *Strickland*, 466 U.S. at 687.  "Second, the [petitioner] must show that the deficient performance prejudiced the defense."  *Id.*

Petitioner will not meet the first prong based solely on disagreements with counsel's strategy or advice.  Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is Petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Bonilla v. Lee*, No. 13-CV-3725, 2014 WL 3894307, at *17 (S.D.N.Y. Aug. 9, 2014); *Henderson v. Martuscello*, No. 10-CV-5135, 2013 WL 6463348, at *15 (S.D.N.Y. Dec. 10, 2013).  Thus, to satisfy this prong, Petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  In assessing counsel's conduct, "a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."  *Mayo v.*

*Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also McNaught*, 646 F. Supp. 2d at 378 (same). Measuring this probability depends on the context of the alleged error.  Where the challenge is to a guilty plea on the basis of ineffective assistance of counsel, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *United States v. Cuoto*, 311 F.3d 179, 187 (2d Cir. 2002) (alteration in original) (internal quotation marks omitted), *abrogated on other grounds by Padilla v. Kentucky*, 599 U.S. 256 (2010).  In the sentencing context, a petitioner must demonstrate that but for counsel's ineffective assistance, a different sentence was probable. *See United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997).  "In considering an ineffective counsel claim, a court need not accept a petitioner's uncorroborated, self-serving testimony as true." *Grullon v. United States*, No. 99-CV-1877, 2004 WL 1900340, at *6 (S.D.N.Y. Aug. 24, 2004).  Thus, an unsubstantiated claim that but for counsel's errors, a petitioner would have gone to trial need not be accepted as true. *See United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir. 1998) (noting that defendant must provide "some further objective evidence" beyond "self-serving, post-conviction testimony") (internal quotation marks omitted); *Potter v. Green*, No. 04-CV-1343, 2009 WL 2242342, at *15 (E.D.N.Y. July 24, 2009) ("Petitioner's only evidence showing that 'but for' counsel's error, Petitioner would not have pled guilty is Petitioner's affidavit; however this statement alone is insufficient.").

18

Judged under this demanding standard of review, Petitioner's claims of ineffective assistance fall far short of the mark.  First, there is Petitioner's claim that counsel never should have permitted (or advised) Petitioner to enter into the Sentencing Stipulation, because there was no benefit to Petitioner from avoiding the *Fatico* hearing.  In asserting this claim, Petitioner ignores the incontestable fact that the Government stated it was prepared to prove at a *Fatico* hearing that Petitioner was responsible for substantially more crack and cocaine than covered by the Sentencing Stipulation (and what was described in the PSR), and that Petitioner possessed a firearm as part of his narcotics distribution activities.  If proved at a *Fatico* hearing (under the less rigorous preponderance-of-the-evidence standard), the offense level and corresponding sentencing range would have been significantly higher (324 months–life vs. 235–293 months). Counsel was able to avoid this possibility by advising Petitioner to enter into the Sentencing Stipulation, thereby taking the weight and role issues that were to be addressed at *Fatico* hearing out of the zone of dispute and substantially reducing the applicable Guidelines Range.  Given this record, it hardly can be said that counsel's advice fell below an objective standard of reasonableness.  *See Rodriguez v. United States*, No. 04-CV-1158, 2005 WL 755769, at *4 (E.D.N.Y. Apr. 4, 2005) ("At a *Fatico* hearing, the government could have presented evidence of [the petitioner's] leadership role; as demonstrated in the PSR, the government had witnesses who attested that [the petitioner] recruited his co-conspirators and organized the robbery.  By avoiding a *Fatico* hearing, [counsel] could reasonably have been trying to avoid highlighting this damaging evidence to the [c]ourt."); *Padilla v. United States*, No. 02-CV-8702, 2004 WL 169743, at *5 (S.D.N.Y.  Jan. 27, 2004) ("Because the [p]lea [a]greement conferred a substantial benefit upon the petitioner by capping his drug quantity, [the] petitioner's ineffective assistance claim [that counsel failed to request a *Fatico* hearing] has no merit.").

19

Similarly unpersuasive is Petitioner's claim that his counsel was ineffective for failing to pursue a safety valve proffer.[11]  Assuming that counsel himself advised Petitioner against seeking a safety value proffer, a claim that counsel himself disputes, the claim still fails.[12]  Even if Petitioner wanted to have a safety valve proffer with the Government, he would not have been eligible for the benefits from such a proffer because of his leadership role in the charged conduct.  *See United States v. Montoya Hernandez*, No. 07-CR-197, 2009 WL 3642868, at *4 (S.D.N.Y. Nov. 4, 2009) ("Because [the] defendant's conduct in this drug conspiracy establishes him as an 'organizer, leader, manager, or supervisor of others in the offense,' he is not eligible for 'safety valve' relief under 18 U.S.C. § 3553(f) or Guidelines Section 5C1.2."); *see also Larcier v. United States*, No. 10-CV-3994, 2010 WL 4118100, at *3 (S.D.N.Y. Oct. 19, 2010) (rejecting claim that counsel was ineffective for failing to obtain safety valve relief when the petitioner was ineligible for relief under the plain terms of § 3553(f)).  Thus, counsel's performance was not deficient in any regard, nor was there any prejudice to Petitioner as he simply was not eligible for safety valve relief, even if he made a satisfactory proffer to the Government.

---

[11] Under the safety valve provisions in Title 18, United States Code, Section 3553(f), a defendant may seek sentencing relief if that defendant, among other things, "has truthfully provided to the Government all information and evidence the defendant has concerning the . . . offenses that were part of the same course of conduct or of a common scheme or plan . . . ." *See also* U.S.S.G. § 5C1.2(a) (same).

[12] Counsel has stated in his sworn affidavit that he explained what would be required of Petitioner at a safety valve proffer – specifically that he would have to tell the truth about Petitioner's role in the charged conduct, as well as the conduct of others.  (Burke Aff. ¶ 14.)  Upon learning this, Petitioner declined to pursue the proffer.  (*Id.*)  Given what Petitioner said in the letter threatening another individual suspected of sharing information with the Government, there is much to be said for counsel's credibility on this point (among others).  However, the Court need not resolve any potential factual dispute, because the claim fails as a matter of law.

III.  CONCLUSION

For the reasons discussed above, the Court dismisses Petitioner's Petition for Writ of

Habeas Corpus.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a

Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y.*

*State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies,

pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be

taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a

defendant's good faith . . . demonstrated when he seeks appellate review of any issue not

frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010)

(citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court

certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of

Respondent and to close this case.

SO ORDERED.

Dated: December 11 , 2014
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

21